**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION**

MARK SINGSON
ADC #90695                                                               PLAINTIFF


V.                          4:07CV00006 JLH/JTR


CORRECTIONAL MEDICAL SERVICES, INC., et al.                 DEFENDANTS


## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

### INSTRUCTIONS

The following recommended disposition has been sent to United States Chief District Judge

J. Leon Holmes.  Any party may serve and file written objections to this recommendation.

Objections should be specific and should include the factual or legal basis for the objection.  If the

objection is to a factual finding, specifically identify that finding and the evidence that supports your

objection.  An original and one copy of your objections must be received in the office of the United

States District Clerk no later than eleven (11) days from the date of the findings and

recommendations.  The copy will be furnished to the opposing party.   Failure to file timely

objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or

additional evidence, and to have a hearing for this purpose before the United States District Judge,

you must, at the same time that you file your written objections, include a "Statement of Necessity"

that sets forth the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence to be proffered at the requested hearing before the United States District Judge was not offered at the hearing before the Magistrate Judge.

3.      An offer of proof setting forth the details of any testimony or other evidence (including copies of any documents) desired to be introduced at the requested hearing before the United States District Judge.

From this submission, the United States District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite 402
> Little Rock, AR 72201-3325

## I.  Introduction

Plaintiff Mark Singson, who is currently incarcerated at the Ouachita River Correctional Unit ("ORCU") of the Arkansas Department of Correction ("ADC"), has commenced this *pro se* § 1983 action alleging that Defendants Dr. Scott Beau,[1] Dr. Herman Jonak,[2] Nurse Nicole Smith,[3] and Correctional Medical Services, Inc. ("CMS")[4] failed to provide him with adequate medical care for

---

[1] Defendant Beau is a private "heart specialist," who contractually agreed to provide medical care to inmates incarcerated at the ORCU.  *See* docket entry #117, Ex. A.

[2] Defendant Jonak is an osteopathic physician, who was the ORCU Unit Physician until September of 2006.  *See* docket entry #96, Ex. 1.  In his Complaint, Plaintiff alleges that Defendant Jonak was fired from that position due to misconduct.  *See* docket entry #2.  However, he has failed to present any evidence to support that contention.

[3] Defendant Nicole Smith is a Licensed Practical Nurse, who worked at the ORCU during the relevant time periods.  *See* docket entry #107, Ex. A.

[4] Correctional Medical Services, Inc., is a private healthcare corporation which provides medical personnel and services to the ADC.  *See* docket entry #107.

a heart condition called supraventricular tachycardia ("SVT")[5] and a herniated disc in his lower back. *See* docket entries #2 and #9.

The Defendants have filed three separate Motions for Summary Judgment, to which Plaintiff has filed three separate Statements of Disputed Facts (which, construed liberally, includes a Response to Defendants' Summary Judgment Motions).[6] For the reasons set forth below, the Court recommends that Defendants' Motions for Summary Judgment be granted, and that this case be dismissed, with prejudice.[7]

---

[5]  Supraventricular tachycardia is a rapid rhythm of the heart originating in the atria or the atrioventricular ("AV") node. *See* American Heart Association website at *www.americanheart.org.*

[6] Defendant Beau has filed a Motion for Summary Judgement, a Brief in Support, and a Statement of Undisputed Facts.  *See* docket entries #117, #118, and #119. Plaintiff has filed a Statement of Disputed Facts, and Defendant Beau has filed a Reply.  *See* docket entries #127 and #128.
Defendant Jonak has filed a Motion for Summary Judgment, a Brief in Support, and a Statement of Undisputed Facts.  *See* docket entries #96, #97, and #98.  Plaintiff has filed a Statement of Disputed Facts.  *See* docket entry #110.
Defendants CMS and Smith have filed a Motion for Summary Judgment, a Brief in Support, and a Statement of Undisputed Facts.  *See* docket entries # 105, #106, and #107.  Plaintiff has filed a Statement of Disputed Facts. *See* docket entry #112.

[7]It is well settled that summary judgment should only be granted when the record, viewed in a light most favorable to the nonmoving party, shows that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of informing the court of its basis for the motion and identifying the parts of the record that show lack of a genuine issue. *Celotex,* 477 U.S. at 323. To defeat a motion for summary judgment, the nonmoving party must go beyond the pleadings and establish "by affidavits, or by the depositions, answers to interrogatories, and admissions on file" that specific facts show a genuine issue for trial exists. *See* Fed R. Civ. P. 56(c); *Celotex,* 477 U.S. at 324.

## II.  Relevant Medical Facts[8]

**A.      SVT**

In January of 2003, Plaintiff was diagnosed with SVT and instructed to take Atenolol to regulate his heart rhythm.  *See* docket entries #117, and #127.  In July of 2005, Plaintiff was taken to St. Vincent's Hospital where Defendant Beau recommended that Plaintiff have an outpatient ablation procedure.[9]  *Id.* The parties agree that the first ablation Defendant Beau performed on August 1, 2005, was unsuccessful.  *Id.*

On August 10, 2005, Plaintiff was transferred to the ORCU where he received an intake medical evaluation by Defendant Jonak.  *See* docket entries #98 and #110.  At that time, Defendant Jonak continued Plaintiff's medications and restrictions, placed him on a cardiovascular diet, and assigned him to the cardiovascular chronic care unit.  *See* docket entry #96, Ex. 1.

On August 18, 2005, Plaintiff reported to the ORCU infirmary with complaints of a rapid heart beat.  *Id.*  After giving Plaintiff an EKG, Defendant Jonak prescribed Atenolol and Verapamil to regulate Plaintiff's heart rate, and monitored his vital signs in the infirmary.  *Id.*  After Plaintiff reported that he was feeling better, Defendant Jonak released him to the barracks.  *Id.*

On October 3, 2005, Defendant Beau performed a second ablation on Plaintiff. *See* docket entries #117 and #127.  According to Plaintiff, during the procedure, he felt a severe burning sensation, which required him to be totally anaesthetized and admitted into the hospital for observation.  *See* docket entries #2 and #127.  Although Defendant Beau does not specifically

---

[8] Unless otherwise noted, these facts are undisputed.

[9] According to Plaintiff, ablation is a procedure in which a catheter is used to cauterize the nerves in the heart that are causing the SVT.  *See* docket entry #2.

address this allegation, he states in his affidavit that he admitted Plaintiff into the hospital for overnight observation because "[s]ubsequent monitoring revealed a mild concern regarding a block in the AV node."  *See* docket entry #117, Ex. A at ¶ 10.  According to Defendant Beau, the second ablation was "successful." *Id.*  at ¶ 10 and 12.

The next day, on October 4, 2005, Defendant Beau discharged Plaintiff, discontinued his heart medications, and did not recommend any follow-up visits.  *See* docket entries #117 and #127. Upon returning to the ORCU, Defendant Jonak instructed Plaintiff to take aspirin and prophylactic antibiotics.  *See* docket entry #96, Ex. 1.  Over the next two months, Plaintiff reported to the ORCU infirmary on several occasions complaining about a rapid heart beat rate.  *See* docket entry #127, Ex. 4.  In response, Defendant Jonak imposed work restrictions and gave Plaintiff Verapamil, which decreased Plaintiff's heart rate.  *See* docket entry #96, Ex. 1.

On December 21, 2005, Plaintiff wrote a letter to Defendant Beau requesting his assistance based on Plaintiff's belief that his SVT had worsened.  *See* docket entry #2 at 24.  On December 22, 2005, Plaintiff reported to the ORCU infirmary with complaints of an irregular heart beat.  *See* docket entry #96, Ex. 1.  Defendant Jonak concluded that Plaintiff was not in acute distress, and that he had a "normal heart rate and  regular rhythm with no murmur and no carotid brutis." *Id.* at ¶ 5. Plaintiff responded by filing a grievance requesting that he be placed on a Holter monitor.  *See* docket entry #2 at 57.

On January 19, 2006, Plaintiff again reported an irregular heart beat to Defendant Jonak. *See* docket entry #96, Ex. 1.  Even though Plaintiff did not appear to be in acute distress, Defendant Jonak ordered:  (1)an EKG, which revealed a "normal sinus rhythm with PVC (premature ventricular contractions);" and (2) a heart monitor, which showed no murmurs. *Id.* at ¶ 19.  Later,

Defendant Jonak placed Plaintiff on a Holter monitor.[10]  *Id.; see also* docket entry #127 at Ex 4.

On February 20, 2006, Plaintiff sent Defendant Beau a second letter expressing his concern that his SVT had worsened and asking Defendant Beau to contact him. *See* docket entry #2 at 23. In his affidavit, Defendant Beau explains that he did not directly respond to this letter, or Plaintiff's December 21, 2005 letter, because the proper procedure was for Plaintiff to communicate his concerns to Defendant Jonak, or other ORCU medical staff, who would contact Defendant Beau when necessary.  *See* docket entries #117, Ex. A.  Further, although Defendant Beau did not see Plaintiff after he discharged him from the hospital on October 4, 2005, he states in his affidavit that he maintained regular contact with Defendant Jonak about Plaintiff's heart condition. *Id.*  According to Defendant Beau, Defendant Jonak did not find it necessary to refer Plaintiff back to him for further evaluation or care.  *Id.*

On February 20, 2006, Plaintiff saw Defendant Jonak, who prescribed Atenolol to treat Plaintiff's irregular heart beats and ordered that Plaintiff received blood pressure and heart rate checks three times a week for thirty days. *See* docket entry #96, Ex. 1.  Defendant Jonak continued Plaintiff's Atenolol prescription on March 10, 2006, and July 12, 2006.  Two months later, Defendant Jonak ceased working for CMS.  *Id.*

**B.      Herniated Disc**

In April of 1987, before his incarceration in the ADC, Plaintiff injured his back.  *See* docket

_____

[10] Plaintiff has submitted a letter and a grievance which suggests (without any supporting evidence) that the EKG and Holter monitor results were sent to Defendant Beau for review.  *See* docket entry #2 at 23 and #127 at Ex. 1. In his affidavit, Defendant Beau makes it clear that: "any electrocardiograms performed on Mr. Singson subsequent to his October procedure were not of the nature that raised enough concern for  Mr. Singson to be referred to an outside specialist, as I did not treat Mr. Singson after October 3, 2005." *See* docket entry #117, Ex. A at ¶ 19. Thus, it appears that Defendant Beau did not receive or review the results of these tests.

entry #112.  A private orthopedic surgeon, who is *not* a party to this action, saw Plaintiff at St. Vincent's Hospital in Arkansas and ordered a myelogram and a CT scan.  *Id.*  Those tests revealed a "possible" herniated disc at L4-L5.  *See* docket entry #112 at 14.  Plaintiff was given pain medications and discharged from the hospital.  Id.

Plaintiff contends that he aggravated his back condition in a car wreck that occurred in October of 1995.  *See* docket entry #112.  Plaintiff further asserts that in 1996 or 1997 he had an MRI performed at Santa Barbara Cottage Hospital in California.  *Id.*  However, none of the parties have provided the Court with the results of that MRI.

Plaintiff began his incarceration in the ADC sometime in 2000.  *See* docket entry #112.  In October of 2000,  Plaintiff was transferred to the Cummins Unit, where he completed several forms authorizing CMS health care workers (who are *not* parties to this action) to obtain copies of his medical records from St. Vincent's Hospital and Santa Barbara Cottage Hospital.  *See* docket entry #107, Ex. B at 90-95.  It appears that some, but not all, of Plaintiff's medical records from those two private hospitals were received.[11]  *Id.*

Over the next four years, Plaintiff received various medications for back pain, and he was periodically placed on bed rest.  *See* docket entries #107, Ex. B and docket entry #112.  Plaintiff asserts that various CMS doctors (who are *not* parties to this action) denied his repeated requests for an MRI and a consult with an orthopedic specialist.  *See* docket entry #112.  According to Defendant

---

[11]   In particular, Plaintiff contends that CMS did not receive the MRI report from Santa Barbara Cottage Hospital or the myelogram from St. Vincent's Hospital. *See* docket entry #112. Plaintiff asserts that the error may have been due to him using the name "Mark Colten" when he was treated at those two hospitals. *Id.*

CMS, neither the MRI nor the consult were necessary.[12]  *See* docket entry #107.

In April of 2005, Plaintiff was transferred to the Delta Regional Unit, where he was examined by Dr. Scott, who is *not* a party to this action.  *See* docket entries #107 and #112.  At Dr. Scott's orders, Plaintiff received an MRI on June 21, 2005, which revealed that Plaintiff had "degenerative disc disease at L4-L5 with [a] superiorly migrating 8 cm left paracentral disc extrusion" and "degenerative disc disease at L5-SI with [a] posterior central annular tear."[13]  *See* docket entry #107, Ex. B at 83 and 84.  Dr. Scott also ordered that Plaintiff be seen by an orthopedic surgeon.  *Id.* at 86-87.

On July 13, 2005, Plaintiff was examined by Dr. Crowell, who is a private orthopedic surgeon and *not* a party to this action.  *See* docket entry #107, Ex. B. at 88.  Dr. Crowell noted that Plaintiff had a "large left paracentral disc herniation at L4-L5" and degenerative disc disease at L4-L5 and L5-SI.  *Id.*  Dr. Crowell recommended that Plaintiff receive an epidural steriod injection, and corrective surgery if the injection was unavailable or failed to alleviate Plaintiff's pain.[14]

---

[12] As will be explained later, this factual dispute is not material to the resolution of the pending Motions for Summary Judgment.

[13] The parties dispute the reason Dr. Scott ordered the MRI.  Plaintiff contends that he was the first CMS doctor to obtain the St. Vincent myelogram and the Santa Barbara MRI, and the test results caused Dr. Scott to order an MRI.  *See* docket entry #112.  In contrast, Defendant CMS asserts that the ADC transfer documents notified Dr. Scott that Plaintiff had a lumbar herniation at L4-L5, and that Dr. Scott ordered the MRI after his examination of Plaintiff revealed possible nerve root irritation. *See* docket entry #107. As will be explained later, when and why Plaintiff's private medical records were obtained  is a factual dispute that is immaterial to the resolution of CMS's Motion for Summary Judgment.

[14] Specifically, Dr. Crowell recommended that: "If possible, epidural steroid injection ["ESI"]. One shot.  If no relief, surgery, hemilaminectomy, dissecting left side of L4-L5.  If ESI not available, surgical intervention." *See* docket entry #107, Ex. B. at 88.  In the follow-up section of his report, Dr. Crowell wrote: "Yes.  Evaluate results of ESI.  If ESI not available, surgical intervention." *Id.*

On August 10, 2005, Plaintiff was transferred to the ORCU, where he had an intake medical evaluation by Defendant Jonak.  *See* docket entry #96, Ex. 1.  At that time, Defendant Jonak continued all of Plaintiff's current medications, and "noted" Dr. Crowell's recommendation that Plaintiff receive an epidural sterioid injection.  *Id.* at ¶ 2.  It is undisputed that Plaintiff *never* received such an injection.  *See* docket entries #96 and #110.

On October 7, 2005, Defendant Jonak instructed Plaintiff to take 325 mgs of aspirin and relieved him from work duty for thirty days.  *See* docket entry #96, Ex. 1.  On October 30, 2005, Plaintiff reported that he aggravated his back condition during a fall in his cell.  *Id.*  Defendant Jonak prescribed a muscle relaxer called Robaxin, recommended that Plaintiff stay in bed for a day, and instructed him to return to the infirmary if needed.  *Id.*  Additionally, in November and December of 2005, Defendant Jonak treated Plaintiff's back pain with an anti-inflammatory medication called Indocin.  *Id.*  Importantly, during a December 1, 2005 examination, Plaintiff reported that his back pain was a 5 on a scale of 1 to 10.  *Id.*

On January 6, 2006, Defendant Jonak consulted with Dr. Crowell, who recommended corrective surgery.  *Id.*  In preparation for surgery, Defendant Jonak temporary discontinued Plaintiff's non-steroid anti-inflammatory medications.  *Id.*  After the surgery was postponed (for unspecified reasons), Defendant Jonak continued Plaintiff on non-steroid anti-inflammatory medications and instructed him to take Tylenol and Darvon for pain.

On February 24, 2006, Defendant Jonak instructed Plaintiff to apply heat to his back and take 800 mg of Motrin to alleviate his pain.  *Id.*  Finally, on April 21, 2006, Dr. Crowell performed a laminectomy.  *Id.*  Importantly, in his deposition, Plaintiff *admitted* that the surgery has eliminated his back pain.  *See* docket entry #96, Ex. 2 at 6.

### III.  Discussion

The Eighth Amendment prohibits cruel and unusual punishment, including conditions of confinement that pose unwarranted pain and suffering or that unreasonably threaten an inmate's health. *Farmer v. Brennan,* 511 U.S. 825 (1994).  To succeed with an Eighth Amendment claim based on inadequate medical care, a plaintiff must prove that:  (1) he had an objectively serious medical need; and (2) prison officials subjectively knew of, but deliberately disregarded, that serious medical need.  *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997).

### A.     Objectively Serious Medical Need

Under the first prong of this analysis, separate Defendants Beau and Jonak argue that Plaintiff has not demonstrated a serious medical need.  *See* docket entries #97 and #118.  However, the Eighth Circuit has explained that a medical need is "objectively serious" if it has been diagnosed by a physician as requiring treatment or if it is "so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Pool v. Sebastian County, Ark.*, 418 F.3d 934, 944 (8th Cir. 2005); *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997).  In resolving Defendants' Motions for Summary Judgment, the Court assumes that Plaintiff's SVT and herniated disc constituted "objectively serious" medical needs.

### B.     Deliberate Indifference

As to the second prong of the analysis, the Eighth Circuit has explained that negligence, gross negligence, or a mere disagreement with the treatment decisions does not rise to the level of deliberate indifference. *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006)*; Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995).  Stated differently, "[d]eliberate indifference includes something more than negligence but less than actual intent to harm; it requires proof of a reckless

disregard of the known risk." *Moore v. Duffy*, 255 F.3d 543, 545 (8th Cir. 2001).  To satisfy this standard, a prisoner must prove that the defendants were personally aware of his serious medical needs and deliberately disregarded those needs.  *Coleman,* 114 F.3d at 784.

       **1.**       **Defendant Beau**

       Plaintiff has raised two different inadequate care claims against Defendant Beau.  First, he alleges that Defendant Beau failed to provide him with adequate medical care during the October 3, 2005 ablation.  *See* docket entries #2, #9, and #127.  The parties dispute whether the October 3, 2005 ablation was a successful treatment of Plaintiff's SVT.  *See* docket entries #2, #8, #117, and #127.  Additionally, Plaintiff alleges, *without any supporting evidence*, that Defendant Beau burned or injured his heart during that procedure.  The Court finds both of these factual disputes to be immaterial.  Even if the Court accepts Plaintiff's allegations as being true, it would amount to no more than negligence or, at most, gross negligence by Defendant Beau.  The law is clear that this is not a sufficient basis for recovery in a § 1983 action asserting an Eighth Amendment inadequate medical care claim.  *See Gibson*, 433 F.3d at 646.

       Plaintiff also alleges that Defendant Beau was deliberately indifferent when he failed to respond to Plaintiff's two letters regarding his post-ablation SVT attacks.  *See* docket entries #2, #9, and #127.  However, Defendant Beau states in his affidavit that he stayed in contact with Defendant Jonak about Plaintiff's condition, and Plaintiff has not refuted that allegation.  *See* docket entry #117.  More importantly, it is undisputed that Defendant Jonak did not refer Plaintiff back to Defendant Beau for any further treatment or evaluations.  *See* docket entries #117 and #127.  Accordingly, the Court concludes that Defendant Beau's Motion for Summary Judgment should be granted on the inadequate medical care claims Plaintiff has asserted against him.

2.      **Defendant Jonak**

Plaintiff alleges that Defendant Jonak provided him with inadequate medical care for his SVT and his herniated discs.

a.      **SVT Inadequate Medical Care Claim**

It is undisputed that, during the medical intake evaluation on August 10, 2005, Defendant Jonak continued Plaintiff's heart medications, monitored his condition, and imposed certain cardiac restrictions until Plaintiff could have his second ablation on October 3, 2005. *See* docket entries #98 and #110. Thereafter, Defendant Jonak consistently treated Plaintiff's complaints of SVT attacks by prescribing medications, restricting his activities, and ordering at least one EKG and Holter monitor test. *See Logan v. Clarke*, 119 F.3d 647, 649-50 (8th Cir. 1997) (finding that prison doctors were not deliberately indifferent when they treated the prisoner on "numerous occasions" and "made efforts to cure the problem in a reasonable and sensible manner").

Plaintiff does not refute these facts. Instead, he contends that the prescribed medications were not effective enough and that Defendant Jonak should have referred him back to Defendant Beau for further treatment. *See* docket entry #98. However, it is well settled that a prisoner's disagreement with a physician's prescribed course of treatment is insufficient to establish a deliberate indifference claim. *See, e.g., Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Dulany,* 132 F.3d at 1240 (holding that: "In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment"). Finally, Plaintiff admitted in his deposition that his SVT has "diminished" with medications. *See* docket entry #96, Ex. A at 8. Accordingly, the Court concludes that Defendant Jonak's Motion for

Summary Judgment should be granted on Plaintiff's claim that he provided inadequate medical care for his SVT.

### b.    Herniated Disc Inadequate Medical Care Claim

Plaintiff also alleges that Defendant Jonak provided him with inadequate medical care when he failed to follow Dr. Crowell's recommendation that he receive an epidural steriod injection.  *See* docket entries #2 and #110.  Although Defendant Jonak did not give Plaintiff such an injection, it is undisputed that he consistently responded to Plaintiff's allegation of back pain with anti-inflammatory drugs, pain medications, and work restrictions.  *See* docket entry #96, Ex. 1.  *See Logan,* 119 F.3d at 649-50 (finding that prison doctors were not deliberately indifferent when they treated the prisoner on "numerous occasions" and "made efforts to cure the problem in a reasonable and sensible manner").  Plaintiff speculates that Defendant Jonak's conservative course of treatment was not as effective as the recommended epidural steroid injections.  However, as previously mentioned, a prisoner's disagreement with his physician over the prescribed course of medical care does not constitute deliberate indifference.  *See Dulany,* 132 F.3d at 1240.

Plaintiff also alleges that Defendant Jonak improperly delayed the recommended back surgery for a number of months, causing him to needlessly suffer considerable pain.[15]  *See* docket entries #2 and #110.  To avoid summary judgment, an inmate alleging a delay in medical treatment that rises to the level of a constitutional deprivation, must place verifying medical evidence in the record to establish the detrimental effect of the alleged delay in medical treatment.  *Gibson v. Weber*, 433 F.3d 642,  646-47 (8th Cir. 2006); *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997).

---

[15]  Plaintiff contends that Defendant Jonak delayed nine months, starting from Dr. Crowell's July 13, 2005 recommendation (for epidural steroid shots, and possibly, surgery) and concluding when Dr. Crowell actually performed the surgery on April 21, 2006.  *See* docket entry #110.

In other words, an inmate must show that a defendant ignored a critical or escalating medical situation, or that the delay adversely affected the inmate's prognosis. *Id.* Plaintiff has failed to come forward with any such verifying medical evidence. To the contrary, he conceded in his deposition that, notwithstanding the alleged delay, the surgery has now corrected his back problem. *See* docket entry #96, Ex. 2 at 6. Accordingly, the Court concludes that Defendant Jonak's Motion for Summary Judgment should be granted on both of the inadequate medical care claims Plaintiff has asserted against him.

### 3.    CMS

Plaintiff alleges that CMS failed to provide him with adequate medical care for his herniated disc by: (1) failing to obtain his private medical records [from St. Vincent's Hospital and from Santa Barbara Cottage Hospital] in a timely fashion;[16] (2) refusing to provide him with an MRI for five years; and (3) waiting five years to refer him to an orthopedic surgeon. *See* docket entries #2 and #112.

In a § 1983 action, a prisoner cannot maintain a respondeat superior theory of liability against a corporation based upon the allegedly wrongful actions of its employees. *See Burke v. North Dakota Dept. of Corrs. & Rehab.*, 294 F.3d 1043, 1044 (8th Cir. 2002). Rather, under § 1983, a corporation, acting under color of state law, can be held liable only for its unconstitutional policies or practices. *Id.* Thus, in this case, Defendant CMS can be held liable only if "there was a policy, custom, or official action that inflicted an actionable injury." *Johnson v. Hamilton,* 452 F.3d 967, 973 (8th Cir. 2006); *see also Sanders v. Sears Roebuck & Co.*, 984 F.2d 972, 975-976 (8th Cir.

---

[16] According to Plaintiff, these medical records would have revealed that he needed immediate treatment and further diagnostic testing for his back condition.

1993).

Plaintiff has failed to present *any* evidence demonstrating that Defendant CMS's alleged failure to obtain his private medical records, send him for an MRI, or refer him to a orthopedic specialist was the result of its official policies or practices.  Rather, it appears that those decisions were made by individual CMS medical employees (other than Defendant Jonak) who are *not named as Defendants in this action*.  Accordingly, the Court concludes that Defendant CMS's Motion for Summary Judgment should be granted on the claims Plaintiff has asserted against it.

### 4.     Nurse Nicole Smith

In his Complaint, Plaintiff alleges that Defendant Smith failed to document his October 5, 2005 and November 8, 2005 visits to the ORCU infirmary for treatment for his SVT.  *See* docket entry #2.  In her Motion for Summary Judgment, Defendant Smith has presented *unrefutted evidence* that: (1) another nurse documented Plaintiff's October 5, 2005 visit to the infirmary; and (2) Defendant Smith documented the November 8, 2005 visit.  *See* docket entry #107, Ex. A. Plaintiff has affirmatively stated that "in light of" that evidence, he no longer wishes to pursue his claim against Defendant Smith.  *See* docket entry #112 at 2.  Accordingly, the Court concludes that Defendant Smith's Motion for Summary Judgment should be granted on the inadequate medical care claims Plaintiff has asserted against her.

### IV.   Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1.     Defendants' three Motions for Summary Judgment (docket entries #96, #105, #117) be GRANTED, and this case, in its entirety, be DISMISSED, WITH PREJUDICE.

2.     The Court CERTIFY, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis*

appeal from any Order and Judgment adopting this Recommended Disposition would not be taken in good faith.

Dated this   24th   day of June, 2008.

_____
UNITED STATES MAGISTRATE JUDGE